11 F.3d 482
 62 USLW 2435
 Stacy L. EWELL, Plaintiff-Appellant,
and
Michael D. Corley; Daniel James; Shawn Pender; John Doe, Plaintiffs,
v.
Edward W. MURRAY; E.C. Morris, Defendants-Appellees.
Stacy L. EWELL; Michael D. Corley; Daniel James; Shawn
Pender, Plaintiffs-Appellants,
and
John Doe, Plaintiff,
v.
Edward W. MURRAY; E.C. Morris, Defendants-Appellees.
 Nos. 92-6169, 93-6269.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 9, 1993.
Decided Dec. 10, 1993.
 
 Gretal J. Toker, Third-Year Law Student and Harold Jonathan Krent, Professor, argued (James T. McLaughlin, Third-Year Law Student, Sara K. Stadler, on brief), Post-Conviction Assistance Project, University of Virginia School of Law, Charlottesville, VA, for appellants.
 Mark Ralph Davis, Asst. Atty. Gen., argued (Stephen D. Rosenthal, Atty. Gen., on brief), Office of the Atty. Gen., Richmond, VA, for defendants-appellees.
 Before HALL and NIEMEYER, Circuit Judges, and BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 The Commonwealth of Virginia enacted a statute in 1990 for the establishment of a DNA data bank which provides that every inmate in the custody of its Department of Corrections "shall provide a blood sample prior to his release." Va.Code Sec. 19.2-310.2. Implementing the legislative directive, the Virginia Department of Corrections issued regulations, first in March 1991 and again in April 1992, which provide for punishment, by loss of good conduct credits, of an inmate who refuses to provide a blood sample. Four inmates, Stacy L. Ewell, Michael D. Corley, Daniel James and Shawn Pender, who are in the custody of the Department of Corrections for offenses committed between July 1986 and November 1987 and who had elected to participate in the good conduct allowance system, filed a class action against Virginia Department of Correction officials under 42 U.S.C. Sec. 1983 for injunctive relief, contending that the Department of Corrections' regulations constitute a change to the good conduct allowance system which violates the Ex Post Facto Clause of the United States Constitution. They also contended that the changes implicate liberty interests protected by the Fourteenth Amendment.
 
 
 2
 On defendants' motion for summary judgment, the district court rejected both contentions and entered judgment for the defendants. The inmates now contend that the district court erred in making those rulings. For the reasons that follow, we affirm.
 
 
 3
 * With the expectation of improving criminal law enforcement with improved methods of identification through DNA (deoxyribonucleic acid) analysis, the Commonwealth of Virginia established a DNA data bank in 1990 by enacting Va.Code Sec. 19.2-310.2 which provides for the collection, analysis, and exchange of DNA information about convicted felons. The law directs that a felon already in custody on the effective date of the statute "shall provide a blood sample prior to his release." Va.Code Sec. 19.2-310.2.
 
 
 4
 Shortly after the effective date of the statute, six Virginia inmates challenged the constitutionality of the statute, contending that it violated the inmates' Fourth Amendment rights, violated the Constitution's Ex Post Facto Clause, and interfered with the inmates' vested liberty interests in violation of the Fourteenth Amendment's Due Process Clause. In Jones v. Murray, 962 F.2d 302 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 472, 121 L.Ed.2d 378 (1992), we rejected most of those inmates' claims, holding that the statute does not violate the Fourth and Fourteenth Amendments. With respect to the contention that the statute violates the Ex Post Facto Clause, we concluded that it was a reasonable prison regulation which did not constitute additional punishment. We stated:
 
 
 5
 The Ex Post Facto Clause does not prevent prison administrators from adopting and enforcing reasonable regulations that are consistent with good prison administration, safety and efficiency.
 
 
 6
 * * * * * *
 
 
 7
 It is precisely because reasonable prison regulations, and subsequent punishment for infractions thereof, are contemplated as part of the sentence of every prisoner, that they do not constitute additional punishment and are not classified as ex post facto.
 
 
 8
 During the period of time that Jones v. Murray was being prosecuted through the courts, the Virginia Department of Corrections adopted regulations that punished an inmate's refusal to provide blood samples pursuant to the statute establishing the DNA data bank. In a March 1991 amendment, the Department of Corrections treated the refusal of an inmate to provide blood samples as a refusal to comply with a direct order, exposing the inmate to loss of good conduct credits of up to 30 days. See Department of Corrections Operating Procedure ("DOP") 806-7.14.6 (March 1, 1991) (providing that "DNA refusals" constitute an infraction)[1]; Department of Corrections Guideline ("DGL") 861 VIII.A.201; B.7; & C.1 (January 1, 1984) (providing for a loss of good conduct time of up to 30 days for violation of a direct order). In April 1992 the Department of Corrections amended DGL 861, renaming it DOP 861, and increased the penalty for an inmate's failure to give a blood sample. Under the scheme as amended in April 1992, an inmate's first refusal to provide a blood sample is punishable by loss of 90 days good conduct time; a second refusal is punishable by loss of 180 days good conduct time; and subsequent refusals are punishable by the loss of all accumulated good conduct time. In addition, an inmate may be subject to placement in isolation for up to 15 days for each infraction. See DOP 861-7.1.116-118; 7.2; 7.3; and 7.4.6 (April 1, 1992). When an inmate complies and provides a blood sample, good time lost as a result of an earlier refusal may be administratively restored. See DOP 861-7.4.6.
 
 
 9
 The inmates contend that the March 1991 amendment to DOP 806, imposing the loss of good-time credits for an inmate's refusal to provide a blood sample, and the April 1992 amendment to DOP 861, increasing the punishment for such a refusal by increasing the amount of good conduct credits that may be lost, impermissibly changes the good conduct allowance system to their disadvantage after their sentences were imposed, in violation of the Ex Post Facto Clause of the United States Constitution. They rely principally on Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (holding that a state's revision to administrative rules of its good-time credit system that disadvantages all previously sentenced inmates violates Ex Post Facto Clause), and Fender v. Thompson, 883 F.2d 303 (4th Cir.1989) (holding that punishment for escape that includes the inmate's loss of parole eligibility for the offense for which he was originally incarcerated violates the Ex Post Facto Clause).
 
 
 10
 The Constitution provides that "No State shall ... pass any ... ex post facto Law." U.S. Const. art. 1, Sec. 10, cl. 1. The prohibition against ex post facto laws was included in the Constitution to restrain state legislatures from "enacting arbitrary or vindictive legislation" and to assure that legislative enactments give "fair warning of their effect," thus permitting the public to rely on them. See Miller v. Florida, 482 U.S. 423, 429-30, 107 S.Ct. 2446, 2450-51, 96 L.Ed.2d 351 (1987). The prohibition, which "applies only to penal statutes which disadvantage the offender affected by them", see Collins v. Youngblood, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990), assures that innocent conduct not be made criminal after the fact and that greater punishment not be imposed after the fact. See Weaver, 450 U.S. at 28, 101 S.Ct. at 963. The settled definition describes as ex post facto,
 
 
 11
 any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time that the act was committed....
 
 
 12
 Collins, 497 U.S. at 42, 110 S.Ct. at 2719 (quoting Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S.Ct. 68, 68, 70 L.Ed. 216 (1925). Although some early Supreme Court cases had suggested a broader definition of an ex post facto law which includes any law which, "in relation to the offence or its consequences, alters the situation of a party to his disadvantage," see Kring v. Missouri, 107 U.S. 221, 228-29, 2 S.Ct. 443, 449, 27 L.Ed. 506 (1883) (emphasis added), the Supreme Court in Collins noted that this definition was too broad, and it expressly overruled Kring. Collins, 497 U.S. at 50, 110 S.Ct. at 2723. In Collins, the Court also noted that not all post-conduct changes to the rights of a defendant, even though substantial, implicate the Ex Post Facto Clause--only those that change the definition of a crime, or a defense to a crime, or alter its punishment. Id at 51, 110 S.Ct. at 2723.
 
 
 13
 In Jones v. Murray, we considered these principles in reviewing the constitutionality of Virginia Code Sec. 19.2-310.2 which established the DNA bank and required inmates to provide blood samples. We concluded that the statute constituted a reasonable regulation which was not penal in nature, and that the punishment of inmates for failure to comply with directives to provide a blood sample was contemplated as part of the sentence of every prisoner. 962 F.2d at 309. Reasonable prison regulations are not frozen at the time of each inmate's conduct, but rather, they may be subject to reasonable amendments as necessary for good prison administration, safety and efficiency, without implicating ex post facto concerns. See Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir.1991) (en banc). Thus, we held that Virginia's enactment of a requirement that inmates provide blood samples or suffer punishment for their refusal did not constitute an ex post facto law. Jones, 962 F.2d at 310.
 
 
 14
 Jones specifically addresses the inmates' argument here that the March 1, 1991 amendment, classifying inmates' refusal to give a blood sample as an infraction, and mandates the conclusion that the amendment does not violate the Ex Post Facto Clause. We are therefore left only with the question of whether the April 1992 amendment, which increases the penalty for the infraction, is ex post facto.
 
 
 15
 It might be helpful in addressing this question to refine the issue and determine what is not involved here. First, we have already determined that the Virginia statute establishing the DNA bank is not penal in nature and therefore, as a reasonable prison regulation, may be applied to all inmates. We also must note that the good conduct allowance system itself, established by Virginia Code Sec. 53.1-198 et. seq., was not amended during the applicable periods here. The rate of good conduct time allowed and the structure of the system have remained constant. Therefore, if the inmates have complied with all prison regulations and requirements, the time they will spend in prison remains the same as it would have, had the DNA requirements not been adopted. We are thus presented with the narrow question of whether prison officials may, consistent with the Ex Post Facto Clause, reasonably increase the penalties for prospective violations by inmates of reasonable prison regulations when the penalties may involve the loss of good conduct time credits. We hold that they may.
 
 
 16
 There is no dispute that the requirement of providing blood samples and the nature and extent of the penalties for refusal were announced before any refusals occurred. Each inmate was given ample notice and was presented with the clear choice of whether to comply with the order of prison officials to provide a blood sample or to refuse, knowing of the nature and extent of the penalty in advance.
 
 
 17
 We might ask if this situation is any different in principle from the situation where prison officials, confronted with increased problems within the prison population of fighting or drug usage, meet the problem with the adoption of additional punishment for prospective violations. The punishment does not add punishment for the original crime for which the inmate was incarcerated. Just as good conduct allowances may be earned by compliance with reasonable prison regulations, they may be lost by subsequent noncomplying conduct. While an inmate has the right, as of the time of his sentence, to expect the good conduct credits then defined for good behavior, he has no right to a particular set of prison regulations adopted to maintain the order, safety, and efficiency of the prison. Accordingly, we conclude that the April 1992 amendment to DOP 861, which operates prospectively to increase penalties for the refusal to provide a blood sample, is constitutional.
 
 
 18
 The inmates' reliance on Weaver v. Graham and Fender v. Thompson does not advance their cause. In Weaver, the state of Florida adopted a statute that reduced the number of monthly "gain-time" credits available to every inmate in its correctional system, even though the inmate had "committed no infraction of the rules and regulations of the division, or laws of the state, and ... has performed in a faithful, diligent, industrious, orderly and peaceful manner, the work, duties and tasks assigned to him." 450 U.S. at 26, 101 S.Ct. at 962 (quoting Fla.Stat. Sec. 944.27(1) (1975)). By its terms the provision applied to all inmates, including those sentenced before the effective date of the statute. Observing that the punishment of those inmates, who were sentenced under the scheme with more generous gain-time opportunities, was increased, the Supreme Court held that the enactment violated the Ex Post Facto Clause. The Court said, "The new provision constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment." Id. at 35-36, 101 S.Ct. at 967-68. The Court's holding, however, carefully noted that the statutory reduction in gain-time opportunities was not related to infractions or prison behavior but applied to an inmate who complied fully with prison rules and regulations, leading to the conclusion that the reductions of gain-time opportunities necessarily amounted to an alteration of the sentence originally imposed. As the court observed,
 
 
 19
 On its face, the statute reduces the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks.
 
 
 20
 * * * * * *
 
 
 21
 The fact remains that an inmate who performs satisfactory work and avoids disciplinary violations could obtain more gain time per month under the repealed provision, Sec. 944.27(1) (1975) than he could for the same conduct under the new provision, Sec. 944.275(1) (1979).
 
 
 22
 Id. at 33, 35, 101 S.Ct. at 966, 967 (emphasis added). In contrast, in the case before us, the opportunity for good conduct allowances of a well-behaving inmate is not altered. An inmate who complies with rules and regulations receives the same credit for good behavior before and after the amendments to DOP 806 and 861. A loss of good conduct credits is meted out only for infractions, and then only prospectively.
 
 
 23
 In Fender, the Commonwealth of Virginia adopted a statute that increased the punishment for the crime of escape by denying the escaping inmate all eligibility for parole for the offense for which he was originally incarcerated. The loss of parole eligibility was an additional punishment for the sentence imposed for the original crime as well as for the crime of escape. We concluded that the Ex Post Facto Clause prohibited Virginia from applying that statute retroactively "to revoke the [inmate's] preexisting eligibility for parole." 883 F.2d at 307. In the case before us, in contrast, the DNA provision is not penal, but administrative, and the prison regulation ordering inmate compliance with an administrative regulation is reasonably within the administrative structure of prison authority that attends every sentence. Only when the inmate chooses to violate the order of prison officials is he punished, and then only for the new conduct constituting a violation of a reasonable prison regulation and not as additional punishment for the original crime.
 
 
 24
 In summary, the good conduct credit system in this case has remained constant, unlike the circumstances in Weaver, and prison punishment was adopted to apply to existing inmates prospectively for infractions of reasonable prison regulations. Accordingly, we hold that the regulations adopted by the Virginia Department of Corrections with its amendments of March 1991 to DOP 806 and April 1992 to DOP 861 do not violate the Ex Post Facto Clause of the United States Constitution.[2]
 
 II
 
 25
 The inmates also contend that the changes in Department of Corrections regulations imposing an additional loss of good-time credits for failure to provide blood samples violates the Due Process Clause because it deprives the inmates "of a vested liberty interest in the terms and conditions of the good-time credit policy they entered." They argue that because they "joined the [good conduct allowance] program prior to the effective date of the revisions of DOP 806," they have a valid liberty interest in receiving good conduct credits under the terms specified before the amendments.
 
 
 26
 Although the range of protected liberty interests is particularly narrow for persons who are lawfully incarcerated, confinement to prison does not strip a prisoner of all liberty interests. See Gaston, 946 F.2d at 343. Thus, a state may create for an inmate a protected liberty interest by enacting procedures that sufficiently channel the discretion exercised by prison officials. See Hewitt v. Helms, 459 U.S. 460, 469, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983). To do so, however, the statutory or regulatory measures at issue must "go[ ] beyond simple procedural guidelines" by using language "of an unmistakably mandatory character requiring that certain procedures 'shall,' 'will' or 'must' be employed...." Id. at 471, 103 S.Ct. at 871; see also, Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989) (noting that a state may create a liberty interest by "establishing 'substantive predicates' to govern official decision-making ... and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met"). But the inmates do not have a protected liberty interest in the procedures themselves, only in the subject matter to which they are directed. The procedures may be changed at the will of prison officials so long as they afford that process which is due under the Due Process Clause of the Fourteenth Amendment. See Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (when a state creates protected liberty interests in good-time credits, the inmate is entitled "to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to ensure that the state-created right is not arbitrarily abrogated"); Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir.1990) (same). The holding of Wolff teaches that before prisoners may be punished for misconduct by being deprived of good-time credits, they must be given advance written notice of the charges against them, they must be allowed to call witnesses (if prison safety so allows), and the factfinders must issue a written statement as to the evidence relied upon and the reasons for the disciplinary action. 418 U.S. at 563-67, 94 S.Ct. at 2978-80.
 
 
 27
 Accepting the inmates' claim that Virginia's system of awarding good conduct credit created a liberty interest protected by the Fourteenth Amendment, see Wolff, 418 U.S. at 557, 94 S.Ct. at 2975, we are nevertheless satisfied that the amended version of DOP 861 provides due process and more when credits are withdrawn. See DOP 861 7.6-1 (procedures for filing disciplinary report of an offense and giving notice to inmate of change); 7.7-1 (requiring prison official to meet with inmate to discuss change and inform him of his rights); 7.7-2 (requiring the recordation of the inmate's election of rights, including the right to an advisor during the hearing on the charge, and the right to call witnesses, and requiring that the inmate be given a written copy of the charge); 7.17-1 (requiring that disciplinary report contain summary of evidence presented, and written findings of basis for decision and penalty); 7.19 (requiring that inmate be given two copies of disciplinary report as soon after institutional review is completed as possible). Therefore, the regulations adopted to establish penalties for the refusal by an inmate to provide blood samples do not violate the Fourteenth Amendment.
 
 III
 
 28
 For the reasons that we have stated in Jones v. Murray, 962 F.2d 302 (1992), and that we give here, we affirm the judgment of the district court.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 DOP 806-7.14.6 (March 1, 1991) provides:
 DNA Refusals. An inmate who fails to comply with [Virginia Code] Section 19.2-310.2 and refuses to provide a blood sample for DNA testing should be charged under DOP 861 and, upon conviction by the Adjustment Committee, will be afforded a due process hearing by the Institutional Classification Committee. The inmate will be reduced to GCA Class IV retroactive to the date of the infraction and will not be eligible to earn good time until such time as he provides the blood sample.
 
 
 [2]
 The defendants have also argued that prison regulations are not legislative enactments that implicate the Ex Post Facto Clause, but only interpretive rules. See United States v. Ellen, 961 F.2d 462 (4th Cir.) (distinguishing for ex post facto purposes between administrative rules that are an extension of a legislative enactment and agency interpretive rules), cert. denied, --- U.S. ----, 113 S.Ct. 217, 121 L.Ed.2d 155 (1992); also compare Bailey v. Gardebring, 940 F.2d 1150 (8th Cir.1991), cert. denied sub nom., Bailey v. Noot, --- U.S. ----, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992), with Flemming v. Oregon Bd. of Parole, 998 F.2d 721 (9th Cir.1993). Although our discussion about whether Virginia's regulations violate the Ex Post Facto Clause assumes that they are laws for purposes of an ex post facto analysis, because of our ruling we do not reach and therefore do not decide that question here