**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-8428

SCOTT LEWIS RENDELMAN,

            Plaintiff – Appellant,

      v.

SCOTT, DOC Captain, individually and in official capacity; JOHN
DOE, Maryland State Trooper, individually and in official
capacity,

            Defendants – Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Andre M. Davis, District Judge.  (1:07-
cv-01643-AMD)

Argued:  March 25, 2010                Decided:  May 19, 2010

Before TRAXLER, Chief Judge, and GREGORY and SHEDD, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Stephanie D. Taylor, JONES DAY, Pittsburgh,
Pennsylvania, for Appellant.  Nicholé C. Gatewood, OFFICE OF THE
ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for
Appellees.  **ON BRIEF:** Thomas S. Jones, JONES DAY, Pittsburgh,
Pennsylvania, for Appellant.  Douglas F. Gansler, Attorney
General of Maryland, Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Scott Lewis Rendelman filed this action under 42 U.S.C. § 1983 alleging that Maryland state officials involuntarily obtained a DNA sample from him during his incarceration pursuant to the Maryland DNA Collection Act, Md. Code Ann., Public Safety, §§ 2-501 et seq. The district court entered summary judgment against Rendelman, holding as a matter of law that the collection of the sample did not violate his rights under the Fourth or Eighth Amendments to the United States Constitution. Rendelman now appeals. We affirm.

I

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). We review the district court's order granting summary judgment de novo. Jennings v. U.N.C., 482 F.3d 686, 694 (4th Cir. 2007) (en banc). In doing so, we generally must view all facts and

2

draw all reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Id. at 380 (quoting Fed. R. Civ. P. 56(c)).

## A.

The material facts of this case are not disputed. Through its DNA Collection Act, the State of Maryland requires individuals convicted of certain felonies to provide a DNA sample to the Department of Maryland State Police ("DMSP"). See generally State v. Raines, 857 A.2d 19, 23-25 (Md. 2004) (discussing the Act's provisions). The Maryland Division of Correction ("DOC") has issued a directive titled "DNA Sampling of Inmates by the Department of Maryland State Police" ("DCD 20-9") that establishes DOC policy and procedure for the collection of DNA samples from designated inmates in cooperation with the DMSP. DCD 20-9 specifies that DOC's policy is "to cooperate with the DMSP as required by state law in the collection of DNA samples from designated inmates to be used for the development, maintenance, and operation of a statewide DNA database system and repository." J.A. 39.

DCD 20-9 further states that "[i]t is mandatory for designated inmates to provide a DNA sample," J.A. 39, and it

3

sets forth the consequences of an inmate's failure to provide a sample:

> When an inmate refuses to provide a DNA sample as required by law, the following actions shall be taken:
>
> a. The staff person ordering the inmate to provide the sample shall write a notice of inmate rule violation.
>
> b. A hearing officer will conduct a disciplinary hearing in accordance with established procedures. If there is a guilty finding, the hearing officer shall order the inmate's visits suspended indefinitely, the revocation of all applicable diminution credits, and placement on disciplinary segregation in accordance with the disciplinary sentencing matrix.
>
> c. The inmate shall be rescheduled by the DMSP to give a DNA sample no sooner than 60 days from the date of refusal. If the inmate again refuses, staff shall use restraints and the minimum amount of necessary force, in accordance with DCD 110-23, to ensure that a DNA sample can be taken.
>
> d. The warden may elect to place an inmate on administrative segregation until a DNA sample is obtained.

J.A. 42.

While he was incarcerated in Maryland, Rendelman was within the class of felons subject to DNA collection. In August 2006, DOC Captain R. Scott was present when a Maryland State Trooper attempted to use a cheek swab to obtain a DNA sample from Rendelman. Rendelman asked the trooper what would happen if he refused, and the trooper responded that DCD 20-9 authorized him to use "whatever force is necessary" to collect the sample. J.A. 9. Rendelman then submitted to the collection of the

4

sample. At no time did Rendelman refuse to provide the sample, and no force was used against him.

Thereafter, Rendelman filed an administrative complaint in which he contended that the collection of the sample was illegal because it was obtained by threat of force. DOC denied this complaint, concluding that DCD 20-9 allows for the use of force when an inmate refuses to provide a DNA sample and that Rendelman was "not threatened but simply advised of the consequences of refusing to submit a sample." J.A. 36.

B.

Rendelman then filed this pro se action against Captain Scott and the state trooper who obtained the cheek swab seeking the return of his DNA sample, destruction of all records pertaining to its analysis, nominal damages of $1, and punitive damages of $10,000. The district court dismissed the action under 28 U.S.C. § 1915(e) without service of process against the defendants, concluding that Maryland's collection of DNA from inmates is constitutionally permissible under our decisions in Jones v. Murray, 962 F.2d 302 (4th Cir. 1992), and Ewell v. Murray, 11 F.3d 482 (4th Cir. 1993).[1] On appeal, we vacated the dismissal order, holding that because neither Jones nor Ewell

---

[1] In those cases, we upheld the constitutionality of Virginia's DNA collection statute. Notably, the Virginia DNA collection statute authorized the taking of blood rather than the unquestionably less intrusive cheek swab.

5

addressed the potential use of force to obtain the DNA (as Rendelman alleges), the district court erred in summarily dismissing the complaint. Rendelman v. Scott, 267 Fed. Appx. 207 (4th Cir. 2008).

On remand, Captain Scott was served with the complaint, and he moved for dismissal or, alternatively, for summary judgment.[2] Captain Scott argued that (1) the collection of the DNA sample did not violate Rendelman's constitutional rights and (2) he is entitled to qualified immunity. Because Captain Scott did not make the alleged threat to use force to obtain the DNA sample, Rendelman's claim against him is premised on the fact that he did not intervene to stop the cheek swab from occurring.

The district court granted summary judgment in Captain Scott's favor, explaining:

> Plainly, under Jones and Ewell, there is no Fourth Amendment impediment in the process of obtaining the DNA sample. Thus, there was no constitutional problem in Scott's failure to halt the process. DCD 20-9 establishes the policy and procedure for collection of the DNA sample from designated DOC inmates in cooperation with the [DMSP]. It is mandatory for designated inmates to provide a sample. Procedures are set in place should the inmate refuse to submit to the sample. Plaintiff's protestations to the contrary, he was not "threatened with force," but in response to his question, was merely advised of the possible consequences of refusing to submit a sample. He then submitted to the collection process.

---

[2] Because he did not know the trooper's identity, Rendelman sued him as "John Doe." The trooper has never been served with the complaint.

6

> Plaintiff was neither sanctioned [nor] physically restrained, nor was the minimal amount of force contemplated in the regulation applied.
>
> Additionally, while the Eighth Amendment prohibits cruel and unusual punishment, in order to state such a claim, the challenged force must be applied for the purpose of causing harm. There are no allegations here that any force that might be employed against inmates refusing to provide DNA samples would be used with the intention of harming the inmates. Therefore, the DNA sampling procedure may be enforced in the same way as other lawful orders of prison officials. [DCD 20-9] expressly permits the use of minimal force to ensure compliance with a lawful order.

J.A. 61-62 (internal footnotes and citations omitted).


II

On appeal, Rendelman concedes that our circuit precedent establishes that the State of Maryland had the right to collect a DNA sample from him under its DNA collection program. He also concedes that the State could have used administrative measures to attempt to coerce his compliance if he refused to provide a sample. Moreover, he does not assert that force was actually used against him to collect his DNA sample or that Captain Scott, the only defendant who has been served in this case, made the alleged threat to use force.

Nonetheless, Rendelman contends that the district court erred in dismissing both of his constitutional claims. He argues that regardless of the State's right to obtain the DNA sample from him, the State did not have the right to use, or

7

threaten to use, force to collect the sample. Further, he argues that even if the State is allowed to use some level of force, the trooper's "threat" to use "whatever force is necessary" to collect the sample is sufficient to state claims against Captain Scott under the Fourth and Eighth Amendments.

Having carefully considered the parties' arguments and the controlling legal principles, we hold that the district court did not err in granting summary judgment to Captain Scott. Our decisions in Jones and Ewell establish that the State had the right to obtain the DNA sample from Rendelman. Those cases did not address the issue of force, but the State's right to obtain the DNA sample from designated inmates must necessarily carry with it the right to use a reasonable degree of force that is sufficient to ensure compliance. Otherwise, the State's right can be rendered meaningless by an inmate who refuses to grant permission for the cheek swab. See generally United States v. Bullock, 71 F.3d 171, 175-77 (5th Cir. 1995) (holding that use of force to obtain blood and hair samples from a criminal suspect for DNA purposes did not violate the Fourth Amendment and noting that the suspect had no right to refuse to comply with the search warrant); Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984) ("Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control.").

8

Of course, there is a constitutional limit to the amount of force that may be used to obtain a DNA sample (just as there is in any government search).  However, this case does not approach that limit as no force was used and the trooper, who was present for the sole purpose to obtain a lawful DNA sample, simply responded to Rendelman's question about the consequences of his refusal to provide the sample.[3]  Based on this record, we find that Rendelman has failed to present sufficient evidence to establish that his rights under the Fourth or Eighth Amendment were violated.  See generally Florida v. Jimeno, 500 U.S. 248, 250 (1991) ("The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."); Whitley v. Albers, 475 U.S. 312, 319 (1986) ("After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." (citation and internal punctuation omitted)).[4]

---

[3] Because the State had the right to use force to obtain the sample from Rendelman, the trooper had the right to inform Rendelman that force could be used.  Although Rendelman argues that he could have interpreted the trooper's "threat" to use "whatever force is necessary" as meaning force that is excessive, we do not believe that interpretation is a reasonable inference on this record.

[4] Our holding that the trooper's actions were not improper necessarily leads to the conclusion that Captain Scott did nothing improper.  Alternatively, to the extent that Rendelman (Continued)

9

## III

Based on the foregoing, we affirm the summary judgment.

AFFIRMED

---

seeks monetary damages from him, Captain Scott is entitled to summary judgment based on qualified immunity. See Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (citation omitted); American Roll-On Roll-Off Carrier, LLC v. P & O Ports Baltimore, Inc., 479 F.3d 288, 295 (4th Cir. 2007) (noting that "we may affirm a district court's decision for any reason appearing in the record").