64 F.3d 163
 Michael Leon HILL, Plaintiff-Appellant,
v.
Clarence L. JACKSON, Defendant-Appellee.
Hibbard KENDRICK, Plaintiff-Appellant,
v.
Clarence L. JACKSON, Defendant-Appellee.
Stephen REEDY, Plaintiff-Appellant,
v.
Clarence L. JACKSON, Defendant-Appellee.
Marvin Leon GRIMM, Jr.; Tommy Crute; Dennis Witt; Robert
Dame; Jimmy L. McNutt; Herbert Haymore,
Plaintiffs-Appellants,
and
Douglas Wardlaw; June A. Goodwin; Lawrence Daniels;
Walter R. Coleman; Michael Leon Hill; Stephen
Reedy; Hibbard Kendrick, Plaintiffs,
v.
Clarence L. JACKSON; Lewis W. Hurst; John A. Brown; Gail
Y. Brown; Jacqueline F. Fraser, Defendants-Appellees.
Donald W. Hoffman, Amicus Curiae.
 Nos. 94-6056, 94-6083, 94-6092, 94-6276.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 9, 1995.
Decided Sept. 6, 1995.
 
 ARGUED: Ira Mickenberg, Director, Appellate Advocacy Clinic, American University Washington College Of Law, Washington, DC, for appellants. Mary Elizabeth Shea, Asst. Atty. Gen., Crim. Litigation Div., Richmond, VA, for appellees. ON BRIEF: John Nadolenco, Third Year Law Student, Appellate Advocacy Clinic, American University Washington College Of Law, Washington, DC, for appellants. James S. Gilmore, III, Atty. Gen., Alan Katz, Sr. Asst. Atty. Gen. & Chief, Crim. Litigation Div., Richmond, VA, for appellees. George Rutherglen, Post-Conviction Assistance Project, University Of Virginia School Of Law, Charlottesville, VA, for amicus curiae.
 Before WIDENER, MICHAEL, and DIANA GRIBBON MOTZ, Circuit Judges.
 Affirmed in part and dismissed in part by published opinion. Judge DIANA GRIBBON MOTZ wrote the opinion, in which Judge WIDENER and Judge MICHAEL joined.
 OPINION
 DIANA GRIBBON MOTZ, Circuit Judge:
 
 
 1
 Several inmates brought actions to challenge the constitutionality of a Virginia parole review policy, which provides for the deferral of parole review for up to three years for certain categories of inmates. After consolidating the actions, the district court granted summary judgment in favor of the parole board, and the inmates appealed. Following oral argument we placed this case in abeyance pending the Supreme Court's decision in California Dept. of Corrections v. Morales, --- U.S. ----, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). We now affirm in part and dismiss in part.
 
 I.
 
 2
 Prior to 1977, when an inmate of the Virginia Department of Corrections became eligible for parole, the parole board was required to conduct a mandatory review of the inmate's imprisonment status. If parole was denied at that initial hearing, the Board was required to conduct subsequent eligibility reviews "at least annually" thereafter. See Va.Code Sec. 53-252 (1974). In 1977, however, the Virginia Code was amended to read in pertinent part:
 
 
 3
 Unless there be reasonable cause for extension of the time within which to review and decide his case, the Board shall review and decide the case of each prisoner during the part of the calendar year which he becomes eligible for parole and thereafter during the same part of each ensuing calendar year until he is released on parole or otherwise.... The Board may in addition and in its discretion review the case of any prisoner eligible for parole at any other time.
 
 
 4
 Va.Code Sec. 53-252 (1978) (emphasis added). In 1982, the General Assembly repealed Sec. 53-252 and enacted Sec. 53.1-154, which was substantively identical to Sec. 53-252. In 1984 the statute was again amended to provide:
 
 
 5
 Unless there be reasonable cause for extension of the time within which to review and decide a case, the Board shall review and decide the case of each prisoner no later than that part of the calendar year in which he becomes eligible for parole, and at least annually thereafter, until he is released on parole or discharged, except that upon any such review the Board may schedule the next review as much as three years thereafter, provided there are ten years or more or life imprisonment remaining on the sentence in such case .... The Board, in addition, may review the case of any prisoner eligible for parole at any other time and may review the case of any prisoner prior to that part of the year otherwise specified.
 
 
 6
 Va.Code Sec. 53.1-154 (1988) (emphasis added).
 
 
 7
 The parole board never exercised the authority provided under Sec. 53.1-154 as amended in 1984 until the parole board promulgated, effective January 1, 1993, a policy authorizing the deferral of parole review for up to three years for inmates who fall within one of the following three categories:
 
 
 8
 (1) those serving a life sentence for any offense;
 
 
 9
 (2) those serving a single sentence of 70 years or more for a violent offense, and having at least 10 years left to serve before mandatory release at the time of parole review; or
 
 
 10
 (3) those serving multiple consecutive sentences totaling 70 years or more, one of which is for a violent offense, and having at least 10 years left to serve before mandatory release at the time of parole review.
 
 
 11
 The 1993 policy was adopted upon the recommendation of a legislative study that concluded that such deferrals would improve operational efficiency. According to the parole board procedural guide, the 1993 deferral policy is also ostensibly designed to "reduce[ ] inmates' sense of false hope [sic]," since "[i]nmates covered by [these] procedures are most likely to receive multiple denials[of parole]," and to "[r]espond[ ] to [the] community's concerns regarding [the] frequency of [parole] reviews."
 
 
 12
 Fourteen inmates--Michael Leon Hill, Hibbard Kendrick, Stephen Reedy, Marvin Leon Grimm, Jr., Tommy Crute, Dennis Witt, Robert Dame, Jimmy L. McNutt, Herbert Haymore, Douglas Wardlaw, June A. Goodwin, Lawrence Daniels, and Walter R. Coleman--filed actions for injunctive and declaratory relief against current or former members of the Virginia Parole Board (collectively, the "Parole Board") asserting that the parole review deferral policy violated the Ex Post Facto, Equal Protection, and Due Process Clauses of the Constitution. The district court granted summary judgment in favor of the Parole Board on all claims. The inmates appealed from the district court's entry of judgment against them on their Ex Post Facto and Due Process claims; they have not, however, appealed the district court's rejection of their Equal Protection claim, and so we do not consider that claim.
 
 
 13
 Moreover, although the inmates purport to challenge the 1984 amended statute, which authorizes general deferrals, it is undisputed that each deferral at issue in this case was made after the promulgation of the 1993 policy and in accordance with that policy of limiting general deferrals to certain categories of inmates. Indeed, there is no evidence of any general deferrals of parole review prior to the implementation of the Parole Board's 1993 policy. Thus, the only question properly before us is whether Virginia's parole review deferral procedures, as specifically implemented by the Parole Board's 1993 deferral policy, withstand the constitutional challenges. See Ward v. Rock Against Racism, 491 U.S. 781, 795-96, 109 S.Ct. 2746, 2756, 105 L.Ed.2d 661 (1989) (in "evaluating a facial challenge to a state law, a federal court must ... consider any limiting construction," including "[a]dministrative interpretation and implementation," that an "enforcement agency has proffered" (citations and internal quotations omitted)); Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 501-02, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985) ("[T]wo of the cardinal rules governing the federal courts" are (1) "never to anticipate a question of constitutional law in advance of the necessity of deciding it," and (2) "never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied" (citations and internal quotations omitted)).
 
 
 14
 Before considering the constitutional claims, however, we note that some of the inmates here cannot challenge the 1984 statute as implemented by the 1993 policy (hereafter, "the policy" or "the 1993 policy"). Inmates Grimm, McNutt, and Goodwin were convicted prior to 1977; the Parole Board concedes that these inmates are entitled to annual parole reviews, and the inmates have therefore agreed to abandon their appeals. Inmates Haymore and Daniels, by virtue of the lengths of their sentences, do not fall within one of the categories established under the 1993 policy; not subject to deferral thereunder, they too have agreed to abandon their appeals. Accordingly, the appeals of Grimm, McNutt, Goodwin, Haymore, and Daniels are dismissed. The remaining eight inmates (Hill, Kendrick, Reedy, Coleman, Crute, Witt, Dame, and Wardlaw) were sentenced for crimes committed between 1977 and 1991 and received sentences that would qualify them for deferral under the Board's 1993 policy. We now turn to those inmates' constitutional claims.
 
 II.
 
 15
 The Constitution prohibits states from enacting ex post facto laws. U.S. Const. art. I, Sec. 10, cl. 1. An ex post facto law is "any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting Cummings v. Missouri, 4 Wall. 277, 325-26, 18 L.Ed. 356 (1867)); see also Morales, --- U.S. at ---- n. 3, 115 S.Ct. at 1602 n. 3 ("the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage' [to covered offenders] ... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable"); Collins v. Youngblood, 497 U.S. 37, 43, 110 S.Ct. 2715, 2719-20, 111 L.Ed.2d 30 (1990) (same). The purposes of the Ex Post Facto Clause are to assure that legislative acts "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed" and to "restrict[ ] governmental power by restraining arbitrary and potentially vindictive legislation." Weaver, 450 U.S. at 28-29, 101 S.Ct. at 964 (footnote and citations omitted).
 
 
 16
 A statute may violate the Ex Post Facto Clause "even if it alters punitive conditions outside the sentence ....[where the statute] substantially alters the consequences attached to a crime already completed, and therefore changes 'the quantum of punishment.' " Id. at 32-33, 101 S.Ct. at 966 (retrospective change in statutory formula providing for "gain time for good conduct" violates Ex Post Facto Clause) (quoting Dobbert v. Florida, 432 U.S. 282, 293-94, 97 S.Ct. 2290, 2298-99, 53 L.Ed.2d 344 (1977)). In Warden v. Marrero, 417 U.S. 653, 661-64, 94 S.Ct. 2532, 2537-38, 41 L.Ed.2d 383 (1974), the Supreme Court held that the statutory conditions of parole eligibility are part of the "punishment" of a crime. Moreover, the Court stated in dicta that "a repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question under the Ex Post Facto Clause ... of whether it imposed a 'greater or more severe punishment than was prescribed by law at the time of the ... offense.' " Id. at 663, 94 S.Ct. at 2538 (emphasis in original) (quoting Rooney v. North Dakota, 196 U.S. 319, 325, 25 S.Ct. 264, 265-66, 49 L.Ed. 494 (1905)). Similarly, we have recognized that, for purposes of the Ex Post Facto Clause "statutes providing for parole are 'part of the law annexed to the crime at the time of the person's offense.' " Roller v. Cavanaugh, 984 F.2d 120, 122 (4th Cir.) (quoting Schwartz v. Muncy, 834 F.2d 396, 398 n. 8 (4th Cir.1987)), cert. granted, --- U.S. ----, 113 S.Ct. 2412, 124 L.Ed.2d 635, cert. dismissed, --- U.S. ----, 114 S.Ct. 593, 126 L.Ed.2d 409 (1993); see also Fender v. Thompson, 883 F.2d 303, 305-06 (4th Cir.1989) (noting that courts have "unvaryingly refused to permit the retrospective application of new or amended statutes or administrative rules which purported, for example, to alter pre-existing criteria for the determination of parole eligibility").
 
 
 17
 The Supreme Court in Morales, however, emphasized that "the question of what legislative adjustments will be held to be of sufficient moment to transgress the constitutional prohibition must be a matter of degree." Morales, --- U.S. at ----, 115 S.Ct. at 1603 (citations and internal quotations omitted) (emphasis in original). There the Court addressed a statute that permitted parole boards to defer parole "suitability" hearings for up to three years for prisoners convicted of more than one offense involving the taking of a life, so long as the respective parole board specifically found that it was not reasonable to expect that parole would otherwise be granted during the intervening years and stated the basis for such a finding. Declining to articulate a "single formula for identifying those legislative changes that have a sufficient effect on substantive crimes or punishments to fall within the constitutional prohibition," the Morales Court instead described its task as "determin[ing] whether [a legislative change] produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Id. (footnote, citations, and internal quotations omitted). The Court concluded that the parole review deferral statute at issue there did not in fact produce such a risk and hence did not violate the Ex Post Facto Clause. Id. at ----, 115 S.Ct. at 1605.
 
 
 18
 In so holding, the Morales Court stated that the statute "creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause." Id. at ----, 115 S.Ct. at 1603 (footnote and citation omitted). The Court observed that the statutory amendment "had no effect on the standards for fixing a prisoner's initial date of eligibility for parole, or for determining his suitability for parole and setting his release date." Id. at ----, 115 S.Ct. at 1602 (citations and internal quotations omitted). Moreover, the Court noted that "the evident focus of the California amendment was merely to relieve the [parole board] from the costly and time-consuming responsibility of scheduling parole hearings for prisoners who have no reasonable chance of being released" and that "[r]ather than changing the sentencing range applicable to covered crimes, the amendment simply alters the method to be followed in fixing a parole release date under identical substantive standards." Id. (citations and internal quotations omitted).
 
 
 19
 The Morales Court identified certain features of the parole review deferral statute which negated any risk of increasing the "measure of punishment" thereunder. First, the statute applied "only to a class of prisoners for whom the likelihood of release on parole is quite remote." Id. at ----, 115 S.Ct. at 1603. Second, a parole board's authority was "carefully tailored" under the statute, which required the board to make a particularized finding that "it is not reasonable to expect that parole would be granted at a hearing during the following years." Id. at ----, 115 S.Ct. at 1604 (citation and internal quotations omitted). Third, the statute had "no effect on the date of any prisoner's initial parole suitability hearing; it affects the timing only of subsequent hearings," and thus the amendment had "no effect on any prisoner unless the Board has first concluded, after a[n initial] hearing, ... that the prisoner is unsuitable for parole." Id. (emphasis in original). In addition, the Court noted that "the Board retain[ed] the authority to tailor the frequency of subsequent suitability hearings to the particular circumstances of the individual prisoner," and "the current record provides no basis for concluding that a prisoner who experiences a drastic change of circumstances would be precluded from seeking an expedited hearing from the Board." Id. Moreover, the Court observed that if the Board's decision to defer parole review is subject to administrative appeal, "[a]n expedited hearing by the Board--either on its own volition or pursuant to an order entered on an administrative appeal--would remove any possibility of harm." Id. at ----, 115 S.Ct. at 1605. Finally, the Morales Court noted that the challenged statute addressed the frequency of "suitability" hearings, and that "the possibility of immediate release after a finding of suitability for parole is largely theoretical; in many cases, the prisoner's parole release date comes at least several years after a finding of suitability" and so "the practical effect of a hearing postponement is not significant." Id. (citation and internal quotations omitted).
 
 
 20
 Here, the limited scope of the Virginia Parole Board's parole review policy similarly reduces the risk that an inmate's "measure of punishment" will be increased thereunder. The policy authorizes the deferral of parole review for up to three years only for inmates serving (1) a life sentence; (2) a single sentence of 70 years or more for a violent offense, and having at least 10 years left to serve before mandatory release at the time of parole review; or (3) multiple consecutive sentences totaling 70 years or more, one of which is for a violent offense, and having at least 10 years left to serve before mandatory release at the time of parole review. As in Morales, the Parole Board's policy has no effect on the substantive standards for scheduling an inmate's initial parole eligibility date, nor does it change the criteria for determining either an inmate's suitability for parole or his or her release date.
 
 
 21
 Moreover, the policy by its terms applies only to a narrow class of inmates, for whom the likelihood of parole release is remote. In its procedural guide, the Parole Board states that the 1993 policy "[a]ffects less than 3 percent of the [prison] population ... approximately 500 inmates," and that "[i]nmates covered by [these] procedures are most likely to receive multiple denials [of parole]." In addition, the Board is required to conduct an initial review of an inmate's eligibility for parole, and only after parole has been denied at this initial stage can subsequent reviews be deferred. These reviews are particularized to the individual inmates, and deferrals under the policy are not automatic. The policy requires the Parole Board to notify inmates in writing of its decision to defer parole consideration and the number of years they will be deferred.
 
 
 22
 Finally, inmates may appeal the Board's decision to defer parole review at any time during the deferral period, in the event that there is a change in circumstances or the procedures have been misapplied. Thus, as in Morales, there is "no basis for concluding that a prisoner who experiences a drastic change of circumstances would be precluded from seeking an expedited hearing from the Board." --- U.S. at ----, 115 S.Ct. at 1604. Hence it follows that, like the parole review amendment in Morales, the Virginia Parole Board's 1993 parole review deferral policy is less likely to "produce[ ] a sufficient risk of increasing the measure of punishment attached to the covered crimes," id. at ----, 115 S.Ct. at 1603, and thus does not violate the Ex Post Facto Clause.
 
 III.
 
 23
 The inmates also claim that the Parole Board's 1993 parole review deferral policy deprives them of their liberty without due process in violation of the Fourteenth Amendment. The Supreme Court has held that if state law creates a right that implicates a person's liberty, the individual possessing this right is entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); see also Franklin v. Shields, 569 F.2d 784, 788 (4th Cir.1977), cert. denied, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978). A person must have more than an "abstract need or desire for [a protectible due process right]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979) (quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)); see also Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir.1991) (en banc ).
 
 
 24
 Of course, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7, 99 S.Ct. at 2104. Nor can a state's past practice of consistently granting parole in itself create such a right. As the Supreme Court has observed, such an expectation
 
 
 25
 is no more substantial than an inmate's expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope. A constitutional entitlement cannot be created--as if by estoppel--merely because a wholly and expressly discretionary state privilege has been granted generously in the past. No matter how frequently[parole] has been granted, the statistical probabilities standing alone generate no constitutional protections; a contrary conclusion would trivialize the Constitution. The ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with [granting parole].
 
 
 26
 Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 465, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (footnote, citations, and internal quotations omitted) (emphasis in original).
 
 
 27
 It is well established, however, that a statute may create a liberty interest in parole release that is protected by the Due Process Clause of the Fourteenth Amendment where the statute gives rise to a legitimate "expectation of parole." Board of Pardons v. Allen, 482 U.S. 369, 373, 107 S.Ct. 2415, 2418, 96 L.Ed.2d 303 (1987); Greenholtz, 442 U.S. at 12, 99 S.Ct. at 2106. This Court, sitting en banc, has held that the Virginia parole statutes do not create any such interest in parole release, because the Parole Board's decision to grant parole is dependent upon "subjective evaluations and predictions of future behavior." Gaston, 946 F.2d at 344. In that case, however, we observed that "parole eligibility [under the Virginia Code] is prescribed thereby giving to a prisoner the right for parole consideration at a specified time, at whatever time a prisoner is considered for parole." Id. (emphasis added). Therefore, although the inmates have no liberty interest in parole release under the Virginia Code, Gaston suggests that there may be some constitutionally protected interest at least in parole "consideration" subject to due process.
 
 
 28
 Even so, although the inmates may have some interest in parole consideration generally, it is clear that there is no "protected liberty interest in the procedures themselves, only in the subject matter to which they are directed." Ewell v. Murray, 11 F.3d 482, 488 (4th Cir.1993) (emphasis in original), cert. denied, --- U.S. ----, 114 S.Ct. 2112, 128 L.Ed.2d 671 (1994). Thus, as we recently observed in Slezak v. Evatt, "that which must be found mandated by state law [in order to support a due process claim] is not procedures alone, or even procedures plus substantive predicates (objective criteria) alone, but substantive results once prescribed procedures have revealed that substantive predicates have been established." 21 F.3d 590, 594 (4th Cir.) (emphasis in original) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 464, 109 S.Ct. 1904, 1910-11, 104 L.Ed.2d 506 (1989)), cert. denied, --- U.S. ----, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Stewart v. Bailey, 7 F.3d 384, 390-93 (4th Cir.1993). Because the inmates here have no liberty interest in parole release under Virginia law, neither can they have any liberty interest in the underlying procedures governing parole determination, so long as the procedures themselves satisfy due process. See Ewell, 11 F.3d at 488 ("The procedures may be changed at the will of prison officials so long as they afford that process which is due under the Due Process Clause of the Fourteenth Amendment.").
 
 
 29
 In Brandon v. District of Columbia Bd. of Parole, 823 F.2d 644 (D.C.Cir.1987), the Court of Appeals for the District of Columbia addressed a claim almost identical to that of the inmates here. There, an inmate argued that District of Columbia law created a "protectible liberty interest in a meaningful annual reparole hearing." Id. at 647. Noting that the relevant parole statutes did not create any liberty interest in parole or reparole release, however, the court characterized the inmate's claim as "lack[ing] support in law or logic; indeed, it is analytically indefensible." Id. at 648 (citations and internal quotations omitted). The Brandon Court observed that:
 
 
 30
 [p]rocess only assumes significance in a context. The notion that naked process itself takes on constitutional dimensions has most troublesome implications. Courts have explicitly and repeatedly rejected the proposition that an individual has an interest in a state-created procedural device, such as a hearing, that is entitled to constitutional due process protection.... "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement".... [T]he mere fact that the government has established certain procedures does not mean that the procedures thereby become substantive liberty interests entitled to federal constitutional protection under the Due Process Clause.... Such state procedural requirements must be enforced in state courts under state law.
 
 
 31
 Id. at 648-49 (citations omitted) (quoting Olim v. Wakinekona, 461 U.S. 238, 250-51, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983)). Similarly, the Seventh Circuit has noted that to suggest otherwise ignores a "fundamental logical flaw":
 
 
 32
 If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him with a hearing. Reductio ad absurdum.
 
 
 33
 Procopio v. Johnson, 994 F.2d 325, 332 (7th Cir.1993) (quoting Shango v. Jurich, 681 F.2d 1091, 1101 (7th Cir.1982)). This would effectively "equate the process due with the substantive interest." Brandon, 823 F.2d at 649.
 
 
 34
 Because the inmates' "right" to annual parole review here is a procedural function of Virginia's parole scheme rather than a substantive right unto itself, the Constitution does not afford that "right" any protection under the Due Process Clause. The district court therefore properly granted summary judgment to the Parole Board on this claim as well.
 
 IV.
 
 35
 Accordingly, the appeals of Marvin Leon Grimm, Jr., Jimmy L. McNutt, Herbert Haymore, June A. Goodwin, and Lawrence Daniels are dismissed. The district court's order granting summary judgment in favor of the Parole Board is otherwise affirmed.
 
 
 36
 AFFIRMED IN PART AND DISMISSED IN PART.