K.K. HALL, Circuit Judge,
concurring in part and dissenting in part:
I agree that the PLRA withstands the constitutional attacks levelled upon it by Roller, and I therefore concur in Part II of Chief Judge Wilkinson’s opinion. I do not believe, however, that Morales dictates the result reached by the majority in Part III of its opinion, and, therefore, I dissent from the affirmance of the district court’s judgment that South Carolina’s amendment to its parole statutes is constitutional.
A
In concluding that the California statute did not violate the Ex Post Facto clause because it “create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes,” the Supreme Court in Morales emphasized two features of the statute: (1) the amended procedure “applies only to a class of prisoners for whom the likelihood of release on parole is quite remote,” and (2) the Parole Board’s authority was carefully tailored to achieve the amendment’s purpose of eliminating hearings “for prisoners who have no chance of being released.” Morales, 5.14 U.S. at—, 115 S.Ct. at 1603-04. Unlike the situation presented in Hill v. Jackson, 64 F.3d 163 (4th Cir.1995), where we applied the Morales analysis to uphold a Virginia statute that changed the frequency of parole-eligibility hearings, the South Carolina amendments do not “bear[ ] a strong resemblance to the California statute sustained in Morales,” ante at 235. Comparison of the three statutes (California, Virginia,[1] and South Carolina) manifests that the degree of change effected by the South Carolina law is one that is of “sufficient moment to transgress the constitutional prohibition.” Morales, 514 U.S. at—, 115 S.Ct. at 1603 (quoting Beazell v. Ohio, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925)).
B
The statute in Morales applies only to prisoners who had been “convicted of more than one offense involving the taking of a life.” The Virginia policy considered in Hill applies “only to a narrow class of inmates,” estimated by the Parole Board to comprise some 3% of the prison population, who are serving (1) a life sentence, or (2) a sentence or sentences totalling at least 70 years for at least one violent offense and for which there are at least 10 years left to be served before mandatory release. Hill, 64 F.3d at 169. Clearly, then, these two statutes affect only the worst of the worst.
The South Carolina statute, on the other hand, applies to all inmates convicted of a “violent crime,” as that term is defined in S.C.Code Ann. § 16-1-60 (Law.Co-op.Supp. 1995). “Violent crime” includes far more offenses than those covered by the deferral rules in California and Virginia. For instance, § 16-1-60 includes crimes for which only a 1-10 year sentence is prescribed. See, e.g., S.C.Code § 44r-53-370(e)(l)(a) (Law.Coop.Supp.1995) (sale, cultivation, possession, etc., of 10-100 pounds of marijuana). We are simply left to guess about how many South Carolina inmates are affected by this provision because the district court made no findings in this regard, and the State makes no effort on this appeal to point out any legislative findings or other authority that would suggest that the amendment in question “applies only to a class of prisoners for whom the likelihood of release on parole is quite remote.” Morales, 514 U.S. at —, 115 S.Ct. at 1603. A comparison of the facial differences among the three groups affected — multiple murderers in California, those with at least a 70-year sentence in Virginia, and certain drug traffickers, burglars, sex offenders and others in South Carolina serv *-1337 ing as little as 1-10 years — demonstrates that the South Carolina law easts a much wider net. Contrary to the majority’s assertion, then, the South Carolina statute does not, at least with respect to the class of persons affected, “bear[ ] a strong resemblance to the California statute sustained in Morales.” Ante at 235.
C
I turn, then, to the second feature of the California statute noted in Morales, the “eareful[ ] tailor[ing]” of the Board’s authority to relieve it of the “costly and time-consuming responsibility of scheduling parole hearings for prisoners who have no chance of being released.” 514 U.S. at—, 115 S.Ct. at 1604 (quoting In re Jackson, 39 Cal.3d 464, 473, 216 Cal.Rptr. 760, 764, 703 P.2d 100, 105 (1985)). In all three statutes, the date of the initial parole hearing is unaffected and the substantive standards for eligibility remain the same. But a detailed comparison of the procedures regarding deferrals in California and Virginia on the one hand, and South Carolina on the other, illustrates starkly critical differences.
First, the “default requirement” in Virginia and California is annual review. In California, the Board must conclude that “it is not reasonable to expect that parole would be granted at a hearing during the following years,” and it must state the bases for such finding. Morales, 514 U.S. at—, 115 S.Ct. at 1604. Similarly, deferrals in Virginia “are not automatic.” Hill, 64 F.3d at 169. In other words, every inmate in these states will receive annual hearings unless the Parole Board affirmatively decides that deferral is warranted on the basis of the evidence considered at the last hearing. In South Carolina, however, the default requirement for the affected class of inmates is two years, and there is no provision requiring a finding that deferral is warranted.
Second, deferral decisions in Virginia are subject to appeal at any time during the deferral period. The Supreme Court noted that while the California law was unclear, “the reliability of the Board’s [deferral] determination may also be enhanced by the possibility of an administrative appeal.” Morales, 514 U.S. at—, 115 S.Ct. at 1604. Although the majority finds no express statutory restriction on the South Carolina Board’s authority to schedule expedited hearings, ante at 236, there is neither evidence in the record nor assertion by the State that such authority exists. In any event, there is clearly no provision for an appeal from the Board’s refusal to schedule an expedited hearing. In other words, while the Board might be able to get around the two-year rule, an inmate cannot challenge a decision not to expedite a hearing.
Third, the Supreme Court noted in Morales that the possibility of immediate release after a finding of suitability for parole is largely “theoretica[l]” and that “in many eases, the prisoner’s parole release date comes at least several years after a finding of suitability.” Id. at—, 115 S.Ct. at 1605; see also In re Jackson, 39 Cal.3d at 474, 216 Cal.Rptr. 760, 703 P.2d 100 (noting that several inmate petitions received by that court involved periods between the date of the suitability finding and the proposed release date that varied from three and a half years to nineteen years).[2] There is no reason to believe that anything approaching this situation obtains in South Carolina. See S.C.Code Ann. § 24-21-645 (providing for a 90-day “provisional parole” period prior to release).
D
The amendment to the South Carolina parole statute made another change that has no counterpart in the statutes under consideration in Morales and Hill. When Roller was sentenced in 1983, the parole statute in effect provided for parole upon authorization by a majority of the Board. 1981 S.C. Acts No. 100 § 13. Three years after he was sentenced, the provision was amended to require *-1336 that at least two-thirds of the Board’s members were needed to authorize the parole of persons convicted of a “violent crime,” 1986 S.C. Acts No. 462 § 31, and that two-thirds requirement remains in effect today, codified in § 24-21-645. The practical effect of this is that the inmate must now garner the votes of five Parole Board members rather than a simple majority of four. The majority considers this change apart from the other retrospective changes in the statute and declares that any ex post facto challenge is foreclosed by Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). I disagree.
As a preliminary matter, I believe that the two-thirds requirement must be considered together with the other changes to the parole statute. See id., 432 U.S. at 294, 97 S.Ct. at 2299 (“We must compare the two statutory procedures in toto to determine if the new may be fairly characterized as more onerous.”). If, as I argue below, the new two-thirds requirement makes parole tougher to attain, then this factor must be examined in conjunction with the amendment’s decrease in the frequency of the hearings to determine whether the overall changes to the statute violate the Ex Post Facto Clause.
The majority’s view that the two-thirds requirement might actually inure to the inmate’s advantage flows from neither Dobbert nor common sense. See ante at 237 (“[P]a-role board members might be more likely to vote for granting parole under the two-thirds rule, knowing that any favorable decision must be concurred in by a greater number of their colleagues.”). The footnote in Dobbert to which the majority refers, ante at 236 (citing id. at 294 n. 7, 97 S.Ct. at 2299 n. 7), was merely the Supreme Court’s response to the petitioner’s argument that the discrete portion of the amendment under consideration — permitting trial judge review of a jury recommendation of life imprisonment in a capital case — was more onerous than the pri- or statute that left the sentencing decision (death or life imprisonment) up to the jury. The Court went on to find that the overall changes, of which trial judge review was only part, “afford[ ] significantly more safeguards to the defendant than did the old [statute],” id. at 295, 97 S.Ct. at 2299, so much so that the Court characterized the overall changes as “ameliorative.” Id. at 294, 97 S.Ct. at 2299. No one would argue that inmates affected by the South Carolina amendments are now in a better position than they were before the statutory changes.
The majority also notes that Morales compels upholding the two-thirds requirement because to do otherwise would amount to the judicial “micromanagement” that the Court cautioned against. Ante at 237. Morales does no such thing. The California statute involved an exceedingly speculative possibility that the punishment of the affected inmates would be increased: The statute applies only to multiple murderers, presumably a small fraction of the inmate population; the Board has to affirmatively decide that a hearing should be deferred and to explain why; the inmate might be able to appeal the deferral decision, and the Board could, of its own volition, advance a hearing date where a change in circumstances warranted; and, significantly, under California’s system, the determination of parole suitability often precedes the actual release date by several years. South Carolina’s amendments, on the other hand, affect persons convicted of relatively minor crimes; mandate automatic deferrals, with no provision for an administrative appeal; increase the percentage of the Board that must vote to grant parole. In addition, there is no indication that a grant of parole is not ordinarily followed promptly by actual release. If Morales is our guide, the South Carolina statute increases the punishment by decreasing the likelihood of release on parole to a degree that offends the Ex Post Facto Clause.

. Although Hill dealt with a Parole Board policy that was appreciably narrower in scope than the statute permitted, I will use the term "statute” in referring to the law involved in that case.

. The hearings at issue in Morales involved the suitability for parole. The actual release date, however, is determined by a matrix of facts relating to the crime and victim. According to the State of California, even had Morales been found suitable for parole at the initial hearing, he could not have been released until approximately 2001. See Petitioner's brief, U.S.S.Ct., 1994 WL 596809 *22 n. 8.