**Roger L. WHITE, Petitioner,**

v.

**DIRECTOR, VIRGINIA DEPART-MENT OF CORRECTIONS, Respondent.**

**Civil Action No. 7:99–cv–00757.**

United States District Court, W.D. Virginia, Roanoke Division.

June 20, 2000.

---

Roger L. White, Dublin, VA, pro se.

Mark Ralph Davis, Office of the Attorney General, Richmond, VA, for respondent. .

## *MEMORANDUM OPINION*

TURK, District Judge.

Petitioner White, a Virginia inmate proceeding *pro se,* brings this action as a petition for habeas corpus, pursuant to 28 U.S.C. § 2254. In his petition, White challenges the sentence imposed on him by the Virginia Parole Board upon the revocation of his mandatory parole in February 1998. The respondent filed a motion to dismiss to which petitioner responded. The court then referred the case to the Hon. Glen E. Conrad, United States Magistrate Judge for preparation of a report setting forth appropriate findings of fact, conclusions of law, and a recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). On May 26, 2000, the Magistrate Judge issued his Report, recommending that the court grant the respondent's motion to dismiss. White has filed objections and supplemental objections to the Report, making the matter ripe for the court's consideration. The court has carefully reviewed de novo the Report, the objections and supplemental objections, and the portions of the record relevant to the objections. Finding no good cause to alter or amend the Report in any way, it is hereby

### ORDERED

that petitioner's objections are hereby **OVERRULED**, that the Report and Recommendation of the Magistrate Judge shall be and hereby is **ADOPTED** in its entirety; that the petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, shall be and hereby is **DISMISSED**; and that this action is hereby stricken from the active docket of the court.

The petitioner is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

## *REPORT AND RECOMMENDATION*

CONRAD, United States Magistrate Judge.

ROGER L. WHITE, a Virginia inmate proceeding *pro se,* has filed this petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. On April 10,1986, in the Roanoke City Circuit Court, petitioner White was convicted on one count of hit and run, and three counts of involuntary manslaughter. The court imposed a suspended sentence of eight years imprisonment. On August 18, 1993, in the same court, petitioner was convicted of one count of cocaine possession and sentenced to one year's imprisonment. On the same day, the court found petitioner in violation of the terms of the suspension of his 1986 sentence and ordered him to serve the eight years previously suspended, with a sentence start date of June 23, 1993. Petitioner was released on mandatary parole on February 2, 1998. Petitioner was arrested again for parole violation and again convicted of cocaine possession. Eventually the Virginia Parole Board directed that petitioner serve the unserved portion of his sentence at the time of his release—the portion attributable to his good conduct allowance, and that attributable to his time left on parole. Mr. White's petition for writ of *habeas corpus* raises the following claims:

1. The retroactive application to revoke all accumulated good conduct credit by the Virginia Parole Board, pursuant to an amendment of VA.CODE § 53.1–159 (1994) violates the *ex post facto* clause when applied to a petitioner who was sentenced before such amendment and policy and procedure change by the Board.

2. The practice, policy and procedure change, beginning May 11, 1995, to coincide with the amended statute, VA.

CODE § 53.1–159 (1994) violates the *ex post facto* clause.

On March 27, 2000, United States District Judge James C. Turk referred this matter to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of reference, the undersigned submits this Report and Recommendation.

## I.   Summary of Evidence

This case is before the court on petitioner's allegations as to the unconstitutional application of state law dealing with parole (pursuant to VA.CODE ANN. § 53.1–151 *et seq.*) and a prisoner's good conduct allowance (GCA) (pursuant to VA.CODE ANN. § 53.1–199 *et seq.*). Because petitioner does not contest his sentence, the undersigned focuses solely on petitioner's history as it relates to parole and his GCA. Petitioner was convicted on one count of hit and run and three counts of involuntary manslaughter in Roanoke Circuit Court in April 1986. The court imposed a suspended sentence of eight years (two years for each count) on April 10, 1986. On August 18, 1993, petitioner was convicted in the same court of one count of cocaine possession and sentenced him to one year's imprisonment. On the same day, that court found him in violation of the terms of the suspension of his 1986 sentence and ordered him to serve eight years consecutively. Petitioner entered the Virginia Department of Corrections (VDOC) on November 22, 1993. His sentence started effective June 23, 1993.

On February 2, 1998, petitioner was released on mandatory parole. At the time of his release, he had seven months and 28 days left to serve from parole. His release also had been advanced three years, eight months, and 25 days based on good conduct. On July 9, 1998 petitioner was arrested for violating parole. On October 26, 1998, petitioner was convicted of possession of cocaine, and sentenced to four years with two years and six months suspended, for a total of one year and six months to be served. That same day, petitioner was charged with failure to appear and sentenced to 30 days to be served consecutively. On November 18, 1998, the Virginia Parole Board ("Board") revoked petitioner's parole and returned him to the jurisdiction of the VDOC. Pursuant to VA. CODE ANN. §§ 53.1–159 and 53.1–165, the Board directed that petitioner serve both the remainder of the unserved portion of his sentence as it stood at the time he was released on mandatory parole (i.e., the three years, eight months and 25 days attributable to good time conduct), and the time left to serve from parole (seven months and 28 days). The VDOC indicates that petitioner's discretionary parole eligibility date is December 16, 1999 and his anticipated good conduct release date is April 16, 2002.

## II.   Procedural History

Petitioner filed a petition for writ of *habeas corpus* with the Virginia Supreme Court on May 19, 1999. On June 29, 1999, the Virginia Supreme Court ordered the petition dismissed as frivolous. Petitioner filed a petition for writ of *habeas corpus* with this court October 21, 1999 and moved for appointment of counsel on November 5, 1999. The court denied that motion by order dated November 9, 1999. Respondent filed an answer and motion to dismiss on November 19, 1999.[1] On the same day, the district court notified petitioner of its receipt of the motion pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975). Petitioner filed a response to respondent's motion to dismiss on December 29, 1999.

## III.   Statement of Applicable Law

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28

---

1. In the answer and motion to dismiss, respondent provides no specific arguments to rebut petitioner's claims, but offers some "basic review principles," an affidavit from James M. Sisk, Manager of Central Criminal and Legal Records for the VDOC, and a Report and Recommendation in a similar case out of the Eastern District of Virginia.

U.S.C. § 2254 to preclude federal courts from granting an application for a writ of *habeas corpus* with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision that contravened clearly established federal law, 28 U.S.C. § 2254(d)(1), or was not factually substantiated, 28 U.S.C. § 2254(d)(2). Findings of fact made by the state court are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ A federal reviewing court must uphold state court legal determinations unless it determines that one of the following three scenarios is present: (1) the state court has arrived at a conclusion opposite to that of the Supreme Court on a point of law; (2) the state court has decided a case differently from the Supreme Court even though the facts of the two cases are materially indistinguishable; or (3) the state court has applied the correct legal principle in an unreasonable manner. *Williams v. Taylor*, —— U.S. ——, ——, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). The last inquiry is governed by an objective standard. *Id.* at 1521–1522 (rejecting the subjective standard the Fourth Circuit Court of Appeals established in *Green v. French*, 143 F.3d 865 (1998)).

■ Prisoners have no fundamental constitutional rights to parole. *Moss v. Clark*, 886 F.2d 686, 690 (4th Cir.1989), citing *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) and *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). A state's establishment and implementation of a parole system, however, gives rise to a due process right which protects prisoners from the arbitrary abrogation of those procedures. *Franklin v. Shields*, 569 F.2d 784, 800 (4th Cir.1977) (*per curiam* opinion noting agreement with the panel's conclusion that the mini-

mum requirements of procedural due process apply to parole release hearings), *accord Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). Prisoners incarcerated for offenses committed prior to the January 1, 1995 termination of parole may continue to qualify for release under the parole system, and must be considered in accordance with the established requirements.[2]

■ The Board has discretion in deciding whether to grant parole: a prisoner's "actual release is a discretionary decision determined by an investigation into numerous factors including his history, mental and physical condition, attitude and compatibility with the 'interests of society'" *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir.1991) (citations omitted); *accord Hill v. Jackson*, 64 F.3d 163, 170 (4th Cir.1995) (citing *Gaston* to note that the Board's discretion is one reason a prisoner does not have a protected liberty interest in parole). Further, the Commonwealth may modify procedures and requirements surrounding parole. *Hill*, 64 F.3d at 170–171(citing *Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir.1993) for the proposition that prisoners have no protected liberty interest in parole procedures themselves, but that any procedures in force must satisfy due process).

■ The Fifth Amendment's Due Process Clause thus constrains the Board's "broad discretion" in prison management, *Gaston*, 946 F.2d at 343, to the extent that established procedures must be applied fairly to all inmates eligible for parole: for example, the Board has discretion in weighing different issues in individual cases assessed in accordance with the governing procedures; it does not have the discretion to not use those procedures. The state's discretion also may be constrained by the *ex post facto* clause. Article I, § 10, clause 1 of the Constitution of the United States prohibits states from

---

2. In 1994, Virginia eliminated parole for persons committing felonies on or after January 1, 1995. Va.Code Ann. § 53.1–165.1. Since

petitioner committed his offenses before that time, he is eligible for parole in accordance with Virginia law.

enacting law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (citations omitted); *accord Hill v. Jackson,* 64 F.3d 163, 167 (4th Cir.1995) (quoting the definition from *Weaver*). Certain amendments to the law and procedures surrounding a state's parole system that have the potential to impose additional punishment than that originally prescribed may implicate the *ex post facto* clause. *Hill* at 168 (citations omitted).

▬▬▬ When a federal court is presented with a claim that has not been properly exhausted in state court, and the federal court determines that the claim now would be barred from review in state court on the grounds of procedural default, the federal court must dismiss the claim in order to enforce the state's procedural bar. *Bassette v. Thompson,* 915 F.2d 932, 936–37 (4th Cir.1990), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991) (citing *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Clanton v. Muncy,* 845 F.2d 1238 (4th Cir. 1988), *cert. denied,* 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988)). To properly exhaust claims in state court, a petitioner must present to the state court the "substance of a federal *habeas corpus* claim" so that the court has the opportunity to correct alleged errors and constitutional violations. *Picard v. Connor,* 404 U.S. 270, 277, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (finding that state prisoner alleging wrongful indictment failed to exhaust his state remedies where he alleged violation only of state law in state courts, and federal circuit court "injected" equal protection claim into case). In Virginia, a litigant filing a petition for a writ of *habeas corpus* must file all claims known to him in his first *habeas* petition or such claims will be deemed to be procedurally defaulted. VA. CODE ANN. § 8.01–654(b)(2) (Michie 1992). Therefore, when a petitioner fails to file all known claims in his initial state habeas petition, the state court deems the claims procedurally defaulted and the federal court is barred from hearing the claim due to that default.

## IV. Findings of Fact, Conclusions of Law and Recommended Disposition

1. The undersigned finds that at the time he filed this *habeas* petition, Roger L. White was in custody pursuant to his conviction under state law and that he seeks relief from his criminal conviction in the Circuit Court for Roanoke City, a state court located within the Western District of Virginia. Accordingly, the undersigned concludes that this court has jurisdiction to adjudicate petitioner's claims, 28 U.S.C. § 2254(a), and that venue is proper.

2. The undersigned finds that petitioner has properly exhausted the two claims identified in his petition for writ of *habeas corpus* before the Virginia Supreme Court in accordance with 28 U.S.C. § 2254(b)(1)(A) and has timely filed his petition in this court in accordance with 28 U.S.C. § 2244(d)(1)(A).

3. The undersigned finds, pursuant to 28 U.S.C. § 2254(d), that petitioner's claims are not cognizable by a federal court since the Virginia Supreme Court's decision was neither factually unsubstantiated nor in contravention of established federal law.

4. Petitioner's first claim alleges that the Board ordered the revocation of petitioner's good conduct allowance and imposed that as a new sentence pursuant to the 1994 amendment to VA.CODE ANN. § 53.1–159. Petitioner contends that both actions violate the *ex post facto* clause because the Board accomplished the actions by retroactively applying a 1994 amendment to VA.CODE ANN. § 53.1–159. Respondent argues that rather than revoking petitioner's GCA, it is simply prohibiting petitioner from using the allowance a second time. In short, respondent argues that because petitioner used the good time credits accumulated during his first period of incarceration to advance his initial re-

lease date, those may not be used a second time to advance his release again. Respondent also argues that the Board did not impose the GCA as a new term of imprisonment. Instead, the Board relied on its authority under VA.CODE ANN. §§ 53.1–159 (as amended in 1994) and 53.1–165 (which authority existed pre–1986) as authority to reimpose, on a prisoner who has violated parole, the unserved portion of his original sentence.[3] Because petitioner did not serve the portion of his sentence attributable to his GCA, respondents contend that petitioner legitimately may be reincarcerated for that period.[4]

Petitioner counters by referencing the plain language of the statute governing the GCA: "[S]uch good conduct allowance shall be applied to *reduce* the person's maximum term of confinement while he is confined in any state correctional facility." VA.CODE ANN. § 53.1–199 (emphasis added). Petitioner also accurately states that the Board has only limited authority to direct the forfeiture of GCA. *See* VA.CODE ANN. § 53.1–189, which provides for forfeiture only where a prisoner has violated prison rules and regulations, or attempted or accomplished escape from confinement. Petitioner argues further that the Board's new policy of "revoking" GCA relies on VA.CODE ANN. § 53.1–159, rather than § 165 (*see* Petitioner's *Legal Update,* issued by VDOC, page 4, stating that "[E]ffective 5–11–95 per policy of the Virginia Parole Board under CVS 53.1–159, all time not physically served on applicable sentences prior to mandatory parole, is revoked and has been added to the record"). As § 53.1–159 was amended to permit

"revocation" of GCA in 1994, and petitioner was sentenced in 1986 and 1993, petitioner contends that the application of the new policy to him is a violation of the *ex post facto* clause.

The question before the undersigned thus is whether the Board had the authority prior to 1994 to deem as "unserved time" that portion of petitioner's sentence which had been set aside on the basis of GCA to permit his early release on mandatory parole. The undersigned finds that it did: while the language of the statute governing application of GCA appears to indicate that the term of a prisoner's sentence is reduced by the amount of GCA earned, it is equally clear that the Board retains extensive discretion, in the form of VA. CODE. ANN. § 53.1–165, subd. A, to modify a prisoner's date of release within the confines of the prisoner's original sentence. As § 53.1–165, subd. A existed prior to 1986, its application to petitioner does not violate the *ex post* facto clause.

■■■ VA.CODE ANN. § 53.1–165, subd. A provides that for persons violating parole

> The Board, in its discretion, may revoke the parole and order the reincarceration of the prisoner for the unserved portion of the term of imprisonment originally imposed upon him, or it may reinstate the parole either upon such terms and conditions as were originally prescribed, or as may be prescribed in addition thereto or in lieu thereof.

This provision and its implicit authority to "revoke" GCA by reimposing the original sentence certainly was present in 1986.

---

**3.** *See* the Sisk affidavit, stating that respondent's decision was made in accordance with both VA.CODE ANN. § 53.1–159 and § 53.1–165.

**4.** The Sisk affidavit states that "Upon reincarceration for a violation of his mandatory parole conditions, White does not get to have these same credits applied a second time so as to advance his release date again." Thus, respondent appears to argue that the GCA does not *eliminate* a portion of a prisoner's sentence, but only advances his release date. *See, e.g., Woodley v. Department of Corrections,* 74 F.Supp.2d 623, 629 (E.D.Va.1999) (ex-

plaining the change in Board policy from using the good time credits to eliminate time from a sentence to using them to advance a release date); *and see* VA CODE ANN. § 53.1–165, subd. A which in authorizing reincarceration of parole violators for any unserved term of their sentence permits the Board's policy change. *And see Coffin v. Murray,* 983 F.2d 563, 569 (4th Cir.1992) (clarifying that extraordinary credits are taken directly from a prisoner's sentence because they are irrevocable in nature, while GCA, since they are revocable, are used as a factor in determining the prisoner's mandatory parole release date).

On June 26, 1986, the Attorney General wrote an opinion clarifying that § 53.1–165, subd. A could be used to reimpose the full balance of a remaining term—both that attributable to GCA and that attributable to parole—on a parole violator whose sentence had been reduced on those joint bases. *See* 1986 WL 221263, *2 (Va.A.G.). It appears that the Board chose to exercise its authority under this provision in 1995 and implemented policy so stating. *See Woodley v. Department of Corrections,* 74 F.Supp.2d 623, 626 and 629–629 (E.D.Va.1999). Therefore, although it is clear that the Board has only limited authority to direct GCA forfeiture with respect to incarcerated prisoners, it has extensive authority, pursuant to § 53.1–165, subd. A, to reimpose an original sentence for individuals who violate the conditions and terms of their parole.

As VA.CODE. ANN. § 53.1–165, subd. A existed prior to imposition of petitioner's two sentences, the Board's revocation of petitioner's parole and imposition of the balance of his unserved term does not implicate the *ex post facto* clause. The Virginia Supreme Court's decision denying petitioner's *habeas* appeal as to claim 1 therefore was neither unreasonable nor contrary to federal law, and the undersigned recommends that the court find petitioner's claim 1 not cognizable under 28 U.S.C. § 2254(d)(2).

5. Petitioner's second claim alleges that the Board's application to his 1993 and 1986 sentences of policies, practices and procedures which the Board modified pursuant to the 1994 amendment to VA. CODE ANN. § 53.1–159 violates the *ex post facto* clause. It is not clear that these guidelines, policies and procedures rise to the level of "penal statutes" or "laws," *see Cruz v. Clark,* 684 F.Supp. 1335, 1339 (E.D.Va.1988) (noting that most courts do not deem federal parole guidelines "law" for purposes of the *ex post facto* clause), *and see Woodley v. Department of Correc-*

*tions,* 74 F.Supp.2d at 631–32 (finding that the policy change implementing § 53.1–159 is a discretionary act, involving procedural matters rather than a legislative act implicating *ex post facto* clause). Notwithstanding the legal status of respondent's policies, practices and procedures, since the undersigned has concluded that the statute does not violate the *ex post facto* clause, it follows that the policies, practices and procedures applying that statute do not either. The Virginia Supreme Court's decision denying petitioner's *habeas* appeal as to claim 2 therefore was neither unreasonable nor contrary to federal law, and the undersigned recommends that the court find petitioner's claim 2 not cognizable under 28 U.S.C. § 2254(d)(2).

■ 6. Petitioner also raises, in his response to respondent's motion to dismiss, an equal protection claim. This claim is not presented in Mr. White's petition for writ of *habeas corpus* and apparently has not been raised before the Virginia Supreme Court.[5] Therefore, the undersigned finds the claim procedurally defaulted due to petitioner's failure to exhaust the claim in state court. *See Bassette v. Thompson, supra.*

7. Based upon the foregoing findings of fact and conclusions of law, the undersigned recommends that the court grant the respondent's motion to dismiss. Both sides are reminded that they are entitled to note objections to this Report and Recommendation within 10 days of the date of its service. Both sides are advised that failure to file objections to the proposed findings of fact, conclusions of law, and recommendations set forth in this report within 10 days of the date of its service may be construed so as to bar an aggrieved party from attacking the factual findings on appeal. At the conclusion of the 10–day period, the Clerk is directed to transmit the record in this case to United States District Judge James C. Turk. The

---

**5.** In his *habeas* petition, Mr. White states that only the two claims addressed above were

brought before the Supreme Court.

clerk also is directed to send certified copies of this Report and Recommendation to petitioner and to counsel for the respondent.

May 26, 2000.